UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
PETER C. LOMTEVAS, pro se,

                          Plaintiff,

      -against-

MICHAEL A CARDOZO, ESQ., individually and as
Corporation Counsel of the City of New York, JOSEPH
GREENBERG, ESQ., individually and as Assistant
Corporation Counsel, NEW YORK STATE OFFICE OF
COURT ADMINISTRATION, ELAINE C. CLARK,
ESQ., individually and as Support Magistrate of the
Queens Family Court,

                         Defendants.
-------------------------------------------------------------------------x

**MEMORANDUM AND ORDER**

05-CV-2779 (DLI)(LB)

**DORA L. IRIZARRY, U.S. District Judge:**

Peter C. Lomtevas ("Lomtevas" or "plaintiff") brings this action against New York Corporation Counsel Michael A. Cardozo, Esq. ("Cardozo"), Assistant Corporation Counsel Joseph Greenberg, Esq. ("Greenberg"), the New York State Office of Court Administration ("OCA"), and New York Family Court Support Magistrate Elaine A. Clark, Esq. ("Clark") (collectively "defendants"), pursuant to 42 U.S.C. §1983, alleging conspiracy to violate and violations of his First, Fifth, Ninth, and Fourteenth Amendment rights.

Plaintiff seeks a judgment ordering that he be reunited with his son and enjoining defendants from attempting to assert jurisdiction in the New York State Family Court. He seeks declaratory relief and compensatory and punitive damages against Clark, and he seeks compensatory and punitive damages against Cardozo and Greenberg. He also requests that the court award him

1

attorney's fees.

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) and (1). For the foregoing reasons, defendants' motion to dismiss is granted in its entirety.

I.  **Factual Background**

This action arises out of plaintiff's divorce from his wife Gisela Lomtevas (now Gisela Strom) ("Strom") on February 2, 1987. At the conclusion of that proceeding, the New York Supreme Court, Queens County, awarded plaintiff custody of their child and ordered him to pay Strom $50.00 a week in child support. (Compl. Ex. A at 2–3.) In the divorce judgment, Judge Zelman stated that "this court retains jurisdiction of this matter concurrently with the Family Court for the purposes of making such further decree with respect to alimony, support, and visitation as it finds appropriate under the circumstances." (Id. at 3.) Later that year, on June 5, 1987, Judge DePhillips of the Queens County Family Court awarded Strom temporary custody of the child. (Compl. Ex. C.) Lomtevas appealed that decision several times over a period of years.

Lomtevas filed an action in the New York Supreme Court, Queens County, to resettle the divorce judgment. The divorce settlement was reworded to state that, "the Supreme Court retains jurisdiction with respect to custody, alimony, support, and visitation . . . the Family Court shall not have any concurrent jurisdiction." (Compl. Ex. B at 3.) There was a subsequent period of confusion concerning which court had jurisdiction to hear the various custody claims and appeals filed by plaintiff. Ultimately, on December 4, 1989, the Appellate Division, Second Department, in declining to modify DePhillips' order granting Strom temporary custody of the child, noted that Lomtevas "may pursue his application for a change of custody in the Supreme Court." Lomtevas v. Lomtevas,

548 N.Y.S.2d 901 (2d Dep't 1989). Lomtevas never returned to the Supreme Court to apply for a change of custody nor, apparently, did he ever try to modify the November 5, 1987 child support order. (Compl. Ex. H at 2–3.)

Around 1991, Gisela Strom left for Germany with the child. According to Lomtevas, he never saw his child again. In March 2003, Strom reappeared to collect child support arrears by petition in the Queens County Family Court. On October 28, 2003, Support Magistrate Clark of the Queens County Family Court issued a temporary order of support directing Lomtevas to pay Strom $50.00 a week effective October 31, 2003. (Compl. Ex. G at 1–2.) Plaintiff filed several orders to show cause before the Supreme Court, Queens County, seeking to dismiss the Family Court proceeding. (Compl. Ex. F.)

Plaintiff's Order to Show Cause was adjourned several times and finally considered fully submitted on January 25, 2005. (Compl. Ex. H at 4.) On April 14, 2005, Judge Lebowitz of the Queens County Supreme Court denied the motion to dismiss the Family Court proceedings, explaining that his court did "not have the jurisdiction to dismiss a proceeding pending in another court." (Id.) Lebowitz recommended that Lomtevas raise the jurisdictional issue in the Family Court proceeding. Lomtevas appealed Lebowitz's decision to the Appellate Division, Second Department, but the Second Department Clerk's Office reports that the appeal was withdrawn on October 15, 2005. (See Goldberg Decl. at 2, Ex. B.)

As per Judge Lebowitz's recommendation, plaintiff filed a motion in Family Court to dismiss Clark's order of support for lack of subject matter jurisdiction. On June 6, 2005, Strom's petition was dismissed, and the dismissal was affirmed by Judge Lubow in the Family Court on August 10, 2005. (Goldberg Decl, Ex. C.) Corporation counsel reports that Strom will appeal Judge Lubow's

decision. (Goldberg Decl. at 2.)

On June 9, 2005, Lomtevas filed this complaint. He alleges that Clark issued the order of temporary support without subject matter jurisdiction and in violation of his due process rights. He alleges that OCA, as Clark's employer and supervisor, is also culpable. He further alleges that Greenberg and Cardozo's refusal to acknowledge that the Family Court did not have jurisdiction and their zealous prosecution of Strom's child support enforcement petition violated his constitutional rights.

**II.    Discussion**

*Standard of Review*

In reviewing a complaint under Fed. R. Civ. P. 12(b)(1), the court accepts as true all factual allegations in the plaintiff's complaint. Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd., 968 F.2d 196, 198 (2d Cir. 1992). However, "inferences favorable to the party asserting jurisdiction should not be drawn." Id. A case is properly dismissed under 12(b)(1) when "the district court lacks statutory or constitutional power to adjudicate it." Makarova v. U.S., 201 F.3d 110, 113 (2d Cir. 2000).

When evaluating a complaint under Fed. R. Civ. P. 12(b)(6), the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 138 (2d Cir. 1999). A motion to dismiss under 12(b)(6) must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 335 U.S. 41, 45-446, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).

*11th Amendment Immunity*

Plaintiff's complaint against OCA must be dismissed for lack of subject matter jurisdiction. "Absent consent to suit in federal court, or an express statutory waiver, the Eleventh Amendment bars a suit in federal court by a citizen of a state against that state or one of its agencies." Bland v. New York, 236 F. Supp. 2d 526, 534 (E.D.N.Y. 2003) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984)). New York has not consented to suits pursuant to §1983 in federal court, nor has Congress enacted an Eleventh Amendment waiver for §1983 claims. See id. Therefore, as an agency of the state, OCA is immune from suit. Posr v. Court Officer Shield #207, 180 F.3d 409, 414 (2d Cir. 1999).

*Abstention Under the Domestic Relations Doctrine*

The court must abstain from exercising jurisdiction over plaintiff's request that he be reunited with his son. The domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees." Ankenbrandt v. Richards, 504 U.S. 689, 703, 112 S. Ct. 2206, 119 L. Ed. 2d 468 (1992). Arguably, plaintiff's request is "aimed at changing the results of [an] order[ ] of child custody," which the court is required to dismiss under the domestic relations doctrine. Rabinowitz v. New York, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004).

Though the domestic relations doctrine has been narrowly construed, covering only matrimonial actions, i.e., cases on the subjects of divorce, alimony, or the custody of children, Williams v. Lambert, 46 F.3d 1275, 1283 (2d Cir. 1995), a number of courts have recognized that federal courts should nevertheless abstain from exercising jurisdiction when issues are "'on the verge' of being matrimonial in nature" if full and fair adjudication is available in state courts. Am. Airlines, Inc. v. Block, 905 F.2d 12, 14 (2d Cir.1990); Melnick v. Adelson-Melnick, 346 F. Supp.

5

2d 499, 505 (S.D.N.Y. 2004). Abstention is particularly urged for cases concerning visitation rights. See, e.g., Melnick, 346 F. Supp. 2d at 506; Neustein v. Orbach, 732 F. Supp. 333, 339 (E.D.N.Y. 1990). Interfering in such cases would "embroil the federal courts in matters over which the state courts have continuing supervision." Melnick, 346 F. Supp. 2d at 506. Since consideration of plaintiff's request for relief would result in a decision regarding visitation, and both the New York Supreme Court and appellate courts are available to plaintiff concerning this matter, abstention is warranted.

Abstention under the domestic relations doctrine is also warranted when a plaintiff makes frivolous constitutional claims that are actually "impermissible attempt[s] to embroil the federal courts in matrimonial matters best left to the states." Hernstadt v. Hernstadt, 373 F.2d 316, 318 (2d Cir. 1967); Fariello v. Campbell, 860 F. Supp. 54, 70 (E.D.N.Y. 1994). Plaintiff's claims that Greenberg's pursuit of the petition in Family Court violated his due process rights, that Clark's alleged disparaging behavior towards him violated the equal protection clause, and that defendants' failure to reunite him with his son abridged his due process rights are such claims. (Compl. ¶¶ 39, 45, 52.) Though he frames his claims in constitutional terms, he is effectively asking this court to affirm or reverse a child custody decree and determine visitation rights. Consideration of this claim would require the court to analyze the New York State Supreme Court's custody decree, determine its force and validity, and possibly modify it or subsequent custody proceedings. Since the New York courts clearly offer plaintiff a forum in which to adjudicate this claim, this court will not exercise jurisdiction.

### *Younger* **Abstention Doctrine**

Abstention is proper regarding plaintiff's request that the court declare Clark's order of

support to have been without legal basis and, therefore, unconstitutional. Abstention is also proper inasmuch as plaintiff requests that the court enjoin defendants from continuing to violate his rights by prosecuting the matter in the Family Court. Under the Younger abstention doctrine, federal courts generally must abstain from adjudicating federal claims that "involve or call into question ongoing state proceedings." Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) (citing Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)). Younger abstention is proper when: "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." Diamond "D" Constr. Corp., 282 F.3d at 198. All three conditions are met in the case at bar: (1) there is at least one ongoing state proceeding concerning the Family Court's exercise of jurisdiction,[1] with an appeal of Judge Lubow's decision imminent; (2) the state has a clear interest in overseeing the regulations governing the interrelationship of its courts and the proper adjudication of alimony, custody, and visitation matters, see, e.g., Moore v. Sims, 442 U.S. 415, 435, 99 S. Ct. 2317, 60 L. Ed. 2d 994 (1979) ("Family relations are a traditional area of state concern."); Melnick, 346 F. Supp. 2d at 505–06; Neustein, 732 F. Supp. at 341 (quoting Mendez v. Heller, 530 F.2d 457, 461 (2d Cir. 1976) ("we should be especially careful to avoid unnecessary or untimely interference with the State's administration of its domestic policies"); and (3) there is no indication that plaintiff lacks the opportunity to air his complaints in New York's appellate courts. Therefore, Younger abstention is appropriate over this claim.

---

[1] The court has no information as to why the appeal of Judge Lebowitz's decision was withdrawn.

*Absolute Judicial and Prosecutorial Immunity*

Admittedly, Younger abstention is "inappropriate where the litigant seeks money damages for an alleged violation of §1983." Rivers v. McLeod, 252 F.3d 99, 101–02 (2d Cir. 2001). However, inasmuch as plaintiff requests punitive and compensatory damages against Clark, Greenberg, and Cardozo in their individual and official capacities, his claims must be dismissed based on the doctrines of absolute judicial and prosecutorial immunity.

The sole claims against Clark over which this court may assert jurisdiction concern her conspiracy to assert and assertion of jurisdiction in the Family Court and her allegedly intimidating and disparaging behavior. Plaintiff's request for damages flowing from these accusations is barred by the doctrine of absolute judicial immunity. See, e.g., Pierson v. Ray, 386 U.S. 547, 553–54, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967); Bradley v. Fisher, 80 U.S. 335, 347 (1871). Judicial immunity can only be overcome for "nonjudicial actions, i.e., actions not taken in the judge's judicial capacity" or for actions "taken in the complete absence of all jurisdiction." Mireless v. Waco, 502 U.S. 9, 11–12, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991).

Plaintiff only alleges the latter situation: that Clark "overstepped her authority in issuing a temporary support enforcement order despite [p]laintiff's motion to dismiss for lack of subject matter jurisdiction." (Compl. ¶ 1.) In light of § 411 of the Family Court Act, which states that "[t]he family court has exclusive original jurisdiction over proceedings for support or maintenance under this article and in proceedings under article five-B of this act, known as the uniform interstate family support act," Clark did not act in clear absence of all jurisdiction. At most, the complaint alleges that Clark assumed jurisdiction erroneously since the divorce settlement vested jurisdiction in the Supreme Court only.

Plaintiff's contention that a support magistrate is not a "judge," but only a "government attorney," does not topple Clark's entitlement to immunity. (Pl.'s Affirmation in Opp'n ¶ 14.) "Judges have absolute immunity not because of their particular location within the Government but because of the special nature of their responsibilities." Butz v. Economou, 438 U.S. 478, 511, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978). Absolute immunity is accorded to grand jurors and prosecutors under a "quasi-judicial" theory so that they "can perform their respective functions without harassment or intimidation." Id. at 512. Persons "performing adjudicatory functions within a federal agency" are also entitled to absolute immunity, as their role is "'functionally comparable' to that of a judge." Id. at 513–14. This absolute quasi-judicial immunity is afforded to state government officials as well. See, e.g., Imbler v. Pachtman, 424 U.S. 409, 420–24, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976) (quasi-judicial immunity afforded to a state prosecuting attorney); Quartararo v. Catterson, 917 F. Supp. 919, 949 (E.D.N.Y. 1996) (state parole officers entitled to absolute immunity). As a support magistrate in the Family Court, Clark's actions were the same as those of a judge. Her decisions were both judicial in nature and subject to review. Therefore, she is entitled to absolute immunity for her role as a support magistrate.

Plaintiff's allegations that Clark screamed at him, "cackled 'denied' as if to belittle [him]," and "in a fit of rage and temper" ordered him to pay child support are also insufficient to overcome judicial immunity. (See Compl. ¶¶ 27, 29.) Judges are immune from suit even when they are accused of malicious or corrupt actions. Stump v. Sparkman, 435 U.S. 349, 356–64, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978); Bradley, 80 U.S. at 347, 351. This immunity is not abridged regardless of how injurious the consequences of their erroneous actions may have been for the plaintiff. Stump, U.S. 435 at 356 n.5, 363–64.

Plaintiff's claims that Greenberg conspired to prosecute and prosecuted in the wrong court similarly must be dismissed based on absolute prosecutorial immunity. Prosecutors are absolutely immune from suit for all "activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation." Barrett v. United States, 798 F.2d 565, 572 (2d Cir. 1986). Activities of this type include initiating prosecution and presenting evidence to a grand jury, or choosing not to do so, and conducting plea bargaining negotiations. Id. Absolute immunity is not abridged even when an attorney's decision to prosecute is malicious. Kalina v. Fletcher, 522 U.S. 118, 124–25 (1997). Municipal attorneys who institute civil lawsuits are also afforded absolute immunity. Cetenich v. Alden, 11 F. Supp. 2d 238, 241 (N.D.N.Y. 1998); see also Rudow v. New York, 822 F.2d 324 (2d Cir. 1987) (municipal agency attorney held immune from suit because of absolute prosecutorial immunity).

Plaintiff's allegation that "Greenberg could have moved to dismiss [the] Petition, and could have advised . . . Strom to file an action in Queens Supreme Court to claim her arrears" is insufficient to overcome absolute immunity. (Compl. ¶ 39.) Greenberg's decision to pursue Strom's UIFSA petition in Family Court was a decision made in his function as Assistant Corporation Counsel. As such, he is absolutely immune from suit for his conduct, and plaintiff's claims against him must be dismissed.

Finally, plaintiff's claim that Cardozo is liable for compensatory and punitive damages as Greenberg's supervisor must be dismissed. Plaintiff's only complaint is that Cardozo, "whose policy and procedure it is to enforce child support orders emanating from any Courts worldwide," supported Greenberg's child support petition in the Family Court. (Compl. ¶¶ 9, 41, 42.) "[W]hen the actions of a prosecutor are subject to absolute immunity, a supervising prosecuting attorney is also covered

by that immunity." Pinaud v. County of Suffolk, 798 F. Supp. 913, 918 (E.D.N.Y. 1992) (citing Buckley v. Fitzsimmons, 952 F.2d 965, 966 (7th Cir. 1992)), *aff'd in part, rev'd in part*, 52 F.3d 1139 (2d Cir. 1995); see also Haynesworth v. Miller, 820 F.2d 1245, 1269 (D.C. Cir. 1987). Since Greenberg has absolute immunity over the only claims that this court has jurisdiction to adjudicate, Cardozo is also immune.

*Declaratory Relief*

The only claim remaining is plaintiff's request for relief against Clark declaring that her actions in "scowling, yelling and baring her teeth" were unconstitutional. However, in order to state a claim under § 1983, the plaintiff must allege facts showing that defendants, acting "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subject[ed], or cause[d] to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Plaintiff's mere allegations that Clark "cackled" at him and "in a fit of rage" ordered him to pay child support are insufficient to state a claim under §1983 and dismissed under Fed. R. Civ. P. 12(b)(6).

### III. Conclusion

For the reasons set forth above, the court grants the defendants' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim.

SO ORDERED.

DATED: Brooklyn, New York
January 31, 2005

_____/s/_____
DORA L. IRIZARRY
United States District Judge